UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GINGER H. WILLIAMS,

        Plaintiff,

v.                                  Case No. 8:18-cv-2402-T-AEP

ANDREW M. SAUL,
Commissioner of Social Security,[1]

        Defendant.

_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

## I.

### A.    Procedural Background

Plaintiff filed applications for a period of disability, DIB, and SSI (Tr. 322-29). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 147-50, 181-84, 185-89, 194-203). Plaintiff then requested an administrative hearing (Tr. 204). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff and a vocational expert ("VE") testified (Tr. 64-118). A supplemental hearing was held by the same ALJ after additional

---

[1] On September 17, 2019 Andrew Saul became the Commissioner of the Social Security Administration. Under Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Saul should be substituted for former Acting Commissioner Nancy A. Berryhill as the defendant in this suit. No further action needs to be taken to continue this suit due to the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

records were obtained, and Plaintiff, a medical expert ("ME"), and a VE testified (Tr. 30-63).[2] Thereafter, the ALJ issued an unfavorable decision finding Plaintiff not disabled and thus denying her claims for benefits (Tr. 10-21). Plaintiff requested review of the ALJ's decision (Tr. 320-21), which the Appeals Council denied (Tr. 1-5). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1969, claimed disability beginning June 1, 2013 (Tr. 322, 326, 346). Plaintiff has a high school equivalency education and past relevant work experience as a food processor, production line worker, waitress, bartender, inventory clerk, nursery laborer, housekeeper, and tool room attendant (Tr. 76-84, 111-13, 351, 361, 423). Plaintiff alleged disability due to bipolar, anxiety, depression, manic depressive, cholesterol, muscle spasms, chronic abdominal pain from gastroparesis and related gastrointestinal problems, and COPD (Tr. 85-94, 350).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 3017, and had not engaged in substantial gainful activity since June 1, 2013, the alleged onset date (Tr. 13). After conducting the initial and supplemental hearings and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: bipolar disorder, depression, anxiety, degenerative disc disease, emphysema/COPD, asthma, hypertension, Barrett's esophagus, hiatus hernia, obesity, and diabetes mellitus. *Id.* Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ then

---

[2] The ME was Nossa W. Maya, M.D., a board-certified internist (Tr. 39), and the VE was Joyce M. Flammas-Courtright (Tr. 51). Although Dr. Maya testified that about 40% of her practice included mental health treatment, she testified only as to Plaintiff's physical impairments (Tr. 42-49).

concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work[3] except:

> [she] can occasionally lift/carry ten pounds; can frequently lift/carry less than ten pounds; can sit for a period of four hours of an eight-hour day; can stand and walk for a period of three hours each during an eight hour workday; can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; can push/pull as much as she can lift/carry; can have occasional contact with extreme heat, extreme cold, dusts, odors, fumes, and pulmonary irritants; frequent exposure to unprotected heights and moving mechanical parts; limited to simple routine tasks; limited to simple work related decisions; able to maintain attention, concentration, persistence, and pace in two hour increments throughout an eight hour workday with normal breaks; and requires the use of portable oxygen for exertion (when performing any activity of exertion).

(Tr. 15). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 16).

Considering Plaintiff's noted impairments and the assessment of a VE, however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 19-20). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a lens inserter, lens block gauger, and stone setter (Tr. 20-21, 55). Accordingly, based on Plaintiff's age, education, work experience, RFC, and VE testimony, the ALJ found Plaintiff not disabled (Tr. 21).

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

# II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.[4] If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ

---

[4] With one exception, the cited references to the regulations pertain to those in effect at the time the decision was rendered. As the parties recognize, on January 18, 2018, the Commissioner revised the rules of 20 C.F.R §§ 404.1527 and 416.927 regarding the evaluation of medical evidence for claims filed after March 27, 2017. *See* 82 Fed. Reg. 5844. Because the revised rules became effective after the claims were filed in this cause, the regulations and rulings that were in effect at the time thereof govern this case.

to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

# III.

On appeal, Plaintiff argues that the ALJ erred by failing to: (1) weigh or discuss the [mental health] evidence in accordance with law; (2) follow the opinions of treating and examining sources; (3) find that certain nonexertional impairments were "severe" at step two; (4) find that she would be absent from work two or more days a month and thus could not perform her past relevant work or other work based on the opinion of the VE; and (5) properly evaluate her subjective complaints of pain.

For the reasons that follow, the Court finds that Plaintiff's first three claims have merit and require remand.

## A. The ALJ's Consideration of Mental Health Evidence

Plaintiff contends that while the ALJ discussed and weighed evidence that supported a denial of benefits, the ALJ failed to weigh and discuss several records that support her claim of mental disability and subjective allegations. In particular, Plaintiff asserts the ALJ failed to discuss and weigh evidence from her treating psychiatrist, Dr. Bharminder S. Bedi (Exhibits 6F, 17F, and 33F), eight psychiatric hospitalizations (Exhibits 27F, 28F, 32F, 38F, and 40F), and an emergency room visit for a panic attack (Exhibit 32F) (Doc. 17 at 3-7).

The Court agrees that the ALJ's consideration of the mental health record was insufficient.[5] As discussed below, the Court finds that the ALJ erred by: failing to consider and weigh the opinion of Plaintiff's treating psychiatrist; impermissibly discussing only that evidence which supported her decision while ignoring evidence to the contrary; and failing to

_____

[5] In considering Plaintiff's mental impairments, the ALJ addressed only the following evidence: (1) a June 2014 psychiatric hospitalization for a suicide attempt; (2) Plaintiff's report of depression to her primary doctor; (3) an October 2015 psychiatric hospitalization for a suicide attempt; (4) a June 2016 psychiatric hospitalization for an overdose; (5) a January 2017 consultative psychological evaluation; (6) one GAF score of 50; and (7) the state agency consultants' mental RFC opinions (Tr. 18-19).

include in her RFC finding and hypothetical question the social limitations assessed by the state agency psychologists and examining psychologist despite having credited their opinions.

### 1. Treating Psychiatrist's Opinion

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor.[6] *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Typically, the ALJ must afford a treating physician's opinion substantial or considerable weight unless "good cause" is shown to the contrary. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)). Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Id.* (citing *Winschel*, 631 F.3d at 1179; *Phillips*, 357 F.3d at 1240-41). The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician. *Id.* (citing *Winschel*, 631 F.3d at 1179). The ALJ's failure to do so constitutes reversible error. *Id.* (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

Dr. Bedi, the only treating psychiatrist of record, saw Plaintiff approximately 31 times from September 2013 to September 2016 (Tr. 541-49, 775-800, 1346-49). He assessed GAF scores[7] during 21 of the visits—a GAF score of 50 on 13 visits (Tr. 542, 545, 548, 776, 784-

---

[6] Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairments, including the claimant's symptoms, diagnosis, and prognosis; what the claimant can still do despite impairments; and the claimant's physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).

[7] A GAF (global assessment of functioning) score reflects a clinician's subjective assessment of an individual's overall functioning but does not itself reveal a specific functional limitation or constitute an assessment of a claimant's ability to work. *Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 613 (11th Cir. 2015); *Ward v. Astrue*, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla.

86, 788-89, 796, 799, 1346, 1349), a GAF score of 60 on 5 visits (Tr. 541, 546, 549, 795, 800), and a GAF score between 50 and 60 on 3 visits (Tr. 781, 794, 1347).[8] His progress notes, many of which are difficult to read or illegible, included mental status exam findings, a short general summary, diagnostic impressions, and prescription medications (Tr. 541-49, 775-800, 1346-49).

Inexplicably, the ALJ did not address Dr. Bedi's records. Nor did the ALJ cite to the exhibits containing the same (Exhibits 6F, 17F, and 33F). Although Dr. Bedi's treatment records did not identify functional limitations, they nonetheless constitute medical opinions that the ALJ was required to address. *See Winschel*, 631 F.3d at 1179 (providing that a doctor's treatment notes that included a description of the claimant's symptoms, a diagnosis, and a judgment about the nature and severity of the claimant's impairments constituted "medical opinions"). Consequently, the Court finds that the ALJ's failure to address Dr. Bedi's records and state the weight accorded his medical opinions constitutes error. *See Schink*, 935 F.3d at 1259.

The Court recognizes that an ALJ's failure to address a treating doctor's opinion or findings may be found harmless when the opinion or findings do not directly contradict the

---

May 8, 2008). "[T]he Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have 'no direct correlation to the severity requirements of the mental disorders listings.'" *Wind v. Barnhart*, 133 F. Appx. 684, 692 n.5 (11th Cir. 2005). An ALJ may reject a GAF score if it is inconsistent with the record. *Wells v. Berryhill*, No. 8:18-cv-454-AEP, 2019 WL 1324622, at *4 (M.D. Fla. Mar. 25, 2019).

[8] GAF scores between 41-50 suggest serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social occupational, or school functioning (e.g., no friends, unable to keep job); and GAF scores between 51-60 suggest moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers). Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32, 34 (4th ed. 2000).

ALJ's ultimate decision.[9] Here, however, because Plaintiff's primary claim of disability is due to mental impairments, there is only one treating psychiatrist of record, and the ALJ failed to address multiple other mental health records, the Court is unable to conclude that the ALJ's failure to address the medical opinion evidence from Dr. Bedi was harmless. Further, the psychiatrist's progress notes, as well as the evidence discussed below that the ALJ failed to address, are critical to Plaintiff's subjective allegations of disabling mental symptoms. On remand, the ALJ must explicitly consider and explain the weight accorded Dr. Bedi's medical opinion evidence.

The Court notes that Dr. Bedi's progress notes are difficult to read, and the ALJ and Plaintiff's counsel recognized this as well (Tr. 67). Thus, in order to avoid future allegations of error, Plaintiff, her counsel, and the ALJ should make some effort to decipher them and/or obtain legible copies. *See Yamin v. Comm'r of Soc. Sec.*, No. 6:07-cv-1574-Orl-GJK, 2009 WL 799457, at *12-13 (M.D. Fla. Mar. 24, 2009) (finding that the illegibility of important evidentiary material can warrant a remand for clarification and supplementation to determine whether the ALJ fully understood the medical evidence in the record); *see also Bishop v. Sullivan*, 900 F.2d 1259, 1262 (8th Cir. 1990) (remanding for clarification due to illegibility of important evidentiary material); *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975)

---

[9]  *See Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (finding plaintiff failed to demonstrate reversible error in the ALJ's failure to identify physician by name because the ALJ summarized the physician's treatment notes and it did not affect the ALJ's ultimate decision); *Tillman v. Comm'r, Soc. Sec. Admin.*, 559 F. App'x 975, 975-76 (11th Cir. 2014) (recognizing harmless error analysis in the context of an ALJ's failure to address a treating source's opinion); *Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008) (finding that the ALJ's failure to state the weight given to a physician's opinions was harmless error because the opinions did not otherwise contradict the ALJ's findings); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (finding harmless error for the ALJ's failure to explicitly state what weight he afforded to a number of physicians' medical opinions when the opinions did not directly contradict the ALJ's findings).

("[w]here medical records are crucial to the plaintiff's claim, illegibility of important evidentiary material has been held to warrant a remand for clarification and supplementation.").

    2. <u>Evidence Contrary to the ALJ's Decision</u>

As for the evidence documenting psychiatric hospitalizations, Plaintiff argues that the ALJ failed to address several of these records and impermissibly chose to discuss only those records that supported her decision (Doc. 17 at 6). Although an ALJ is not required to discuss every piece of record evidence, Plaintiff is correct that an ALJ cannot pick and choose which evidence supports her decision while disregarding evidence to the contrary. *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (providing that it is improper for an ALJ to focus on one aspect of the evidence while disregarding or ignoring other contrary evidence because the ALJ's review of the record must take into account and evaluate the record as a whole). When an ALJ reaches her decision in this manner, the court is unable to find that the decision is supported by substantial evidence. *See id.* (providing that reversal is required when an ALJ focuses on evidence in support of decision and ignores other evidence because the court cannot determine whether the decision is supported by substantial evidence); *Broughton v. Heckler,* 776 F.2d 960, 961-62 (11th Cir.1985) (recognizing that ALJ's failure to mention or consider contrary medical records, let alone articulate reasons for disregarding them, constitutes reversible error); *see also Tyner v. Colvin*, No. 3:14-cv-645-J-MCR, 2015 WL 4080718, at *2 (M.D. Fla. July 6, 2015) (finding ALJ may not ignore relevant evidence when it supports claimant's position); *Meek v. Astrue*, No. 3:08-cv-317-J-HTS, 2008 WL 4328227, *1 (M.D. Fla. Sept. 17, 2008) (finding ALJ may not ignore evidence that does not support decision and must explain why significant probative evidence was rejected).

On thorough review of the record and the ALJ's decision, the Court finds that the ALJ failed to evaluate the mental health record as a whole and impermissibly disregarded or ignored

medical evidence that was contrary to her decision. The ALJ failed to address eight of Plaintiff's psychiatric hospitalizations during the pertinent period: November 2015 (Tr. 1026-28 at Exh. 28F); March/April 2016 (Tr. 1023-24, 1029 at Exh. 28F); April 2016 (Tr. 988-96 at Exh. 27F); July 2016 (Tr. 1319-20, 1239, 1331-33 at Exh. 32F); two in August 2016 (Tr. 1249-52, 1296, 1298, 1300-03, 1307-08 at Exh. 332F); December 2016 (Tr. 2228-34 at Exh. 38F); and May 2017 (Tr. 2245-67 at Exh. 40F). These records reveal voluntary and involuntary psychiatric hospitalizations for attempted suicide by ingesting psychiatric medications (Tr. 1026-28, 1249-52, 1319-20), suicidal ideation due to depression and anxiety (Tr. 1023-24, 1029, 2228-34, 2245-67), suicidal ideation due to gastroparesis pain (Tr. 988-89), and panic attacks with chest pain and hallucinations (1296, 1298, 1200-08). They also reveal GAF scores of 28 and 48 (Tr. 1023-24, 1027, 1320)[10] which, along with Dr. Bedi's multiple assessments of GAF scores of 50 (Tr. 542, 545, 548, 776, 784-86, 788-89, 796, 799, 1345, 1349), the ALJ failed to address. Although GAF scores are not indictive of specific functional limitations, multiple GAF scores between 28 and 50, as well as multiple psychiatric hospitalizations, support Plaintiff's claim of serious and persistent mental symptoms and are contrary to the ALJ's finding of "moderate" mental limitations. The ALJ also failed to address Plaintiff's ER treatment in September 2016 for depression and an "acute anxiety attack" (Tr. 1225-26, 1229-34, 1238), which lends further support to Plaintiff's claim of disabling anxiety and panic attacks. Given the ALJ's failure to address medical evidence contrary to her decision, the Court is unable to conclude that the decision is supported by substantial evidence. *See McCruter*, 791 F.2d at 1548; *Broughton,* 776 F.2d at 961-62.

---

[10]    GAF scores between 21-30 suggest behavior is considerably influenced by delusions or hallucinations or serious impairment, in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends). Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32, 34 (4th ed. 2000).

The Commissioner's contention to the contrary is without merit. Relying primarily on *Dyer v. Barnhart*, 395 F.3d 1206 (11th Cir. 2005), the Commissioner contends the decision makes clear that the ALJ considered the entire record and adequately considered Plaintiff's condition as a whole (Doc. 17 at 7-10). *Dyer* is factually distinguishable and inapposite to the determination in this case. In that case, the ALJ failed to mention one of the claimant's pain medications when considering the claimant's subjective complaints of pain. *Dyer*, 395 F.3d at 1211. The Eleventh Circuit found the omission inconsequential to the ALJ's credibility determination because the medication was prescribed for an injury unrelated to the claimant's alleged disabling impairments and, in any event, noted "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]" *Id.* (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)). In this case, the ALJ discussed mental health records supportive of her decision while ignoring other evidence to the contrary. Unlike the ALJ's review of the evidence in *Dyer*, the decision does <u>not</u> make clear that the ALJ considered the entire record and adequately considered Plaintiff's condition as a whole.

   3.   <u>The ALJ's RFC Finding and Hypothetical Question</u>

Plaintiff does not specifically challenge the ALJ's RFC finding and hypothetical question. The Commissioner, however, generally refutes Plaintiff's challenge to the ALJ's consideration of the mental health record by asserting that the ALJ's mental RFC was supported by the evidence.

Given the Commissioner's assertion and the Court's duty to "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence," *Schink*, 935 F.3d at 1257, the Court has considered the evidence underlying the ALJ's mental RFC finding and hypothetical question. As explained below, neither are supported by substantial evidence.

In assessing Plaintiff's mental RFC, the ALJ considered the opinions of the state agency psychologists, Judith E. Meyers, Psy.D., Robert Hodes, Ph.D.,[11] and the opinion of examining psychologist, Elsa Oben, Psy.D. (Tr. 19). Drs. Meyers and Hodes opined that Plaintiff was moderately limited in her ability to interact appropriately with the general public and get along with coworkers or peers without distracting them or exhibiting behavioral extremes, would function best at tasks with little to no social demands for communicating with others, and was able to was able to perform simple, repetitive tasks with limited social contact (Tr. 130, 158). They concluded that the "evidence suggests [Plaintiff has] the capacity to understand and retain simple instructions . . . [and] persist at tasks" and would "function best at tasks with little to no social demands for communicating with others." *Id.* As for Dr. Oben, she assessed mild limitations in the ability to interact appropriately with supervisors and coworkers, respond appropriately to usual work situations, and respond to changes in a routine work setting, and moderate limitations in the ability to interact appropriately with the public. (Tr. 2210).

The ALJ gave "great weight" to the state agency psychologists' opinions (Tr. 19). The ALJ stated their opinions showed Plaintiff had "moderate difficulties with maintaining social functioning and maintaining concentration, persistence, or pace[,]" which was "consistent with the evidence as a whole, as well the evaluation completed by Dr. Oden . . . noting the [Plaintiff's] difficulty leaving her home . . .." *Id.* The ALJ gave "some weight" to Dr. Oben's opinion that Plaintiff had "only moderate difficulty interacting appropriately with the public[,]" explaining that the evidence supported additional restrictions to Plaintiff's mental RFC (Tr. 19).

Having given significant weight to the opinions of state agency psychological consultants and seemingly crediting Dr. Oben's social restriction, the ALJ should have either explicitly included all limitations they assessed in her RFC finding and hypothetical question

---

[11] Dr. Hodes "affirmed" Dr. Meyers' mental RFC assessment (Tr. 158, 162-63).

or explained how their limitations were otherwise implicitly accounted for in the same. Because the ALJ did neither with regard the social limitations they assessed, the ALJ's decision is not supported by substantial evidence. *See Winschel*, 631 F.3d at 1180-81 (reversing where ALJ relied on VE's testimony to hypothetical question that failed to include or otherwise implicitly account for all of the claimant's impairments); *Lapica v. Comm'r of Soc. Sec.*, 501 F. App'x 895, 899 (11th Cir. 2012) (concluding that the decision was not supported by substantial evidence where the ALJ did not expressly incorporate in the hypothetical questions posed to the VE the specific limitations contained in the treating physician's opinion); *Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 871-72 (11th Cir. 2012) (holding that ALJ erred by giving great weight to a doctor's RFC opinion but not incorporating one of the doctor's limitations in his RFC finding or giving a reason for not doing so); *Rosario v. Comm'r of Soc. Sec.*, No. 6:12-cv-1687-Orl-GJK, 2014 WL 667797, at *3 (M.D. Fla. Feb. 20, 2014) (reversing and remanding for further proceedings where the ALJ gave significant weight to a state agency psychologist's opinion that the claimant was limited to low stress settings but failed to explain why she did not include or otherwise account for that limitation in her RFC determination and hypothetical questions to the VE) (citations omitted); *Cusimano v. Astrue*, No. 8:10-cv-2200-T-TGW, 2011 WL 3796746, at *3-4 (M.D. Fla. Aug. 26, 2011) (finding ALJ committed reversible error by purporting to accept doctor's limitation for low-stress work but including in RFC and hypothetical question only a limitation for no daily production requirements because low-stress work typically encompasses more limitations than the absence of daily production quotas and ALJ failed to provide any basis for narrowing limitation).

On remand, the ALJ must specifically address the social limitations assessed by the state agency and examining psychologists.

**B. The Examining Doctor's Opinion**

Next, Plaintiff argues the ALJ erred in according little weight to the physical RFC opinion of Bhupendra K. Gupta, M.D. She also argues that the ALJ improperly substituted her judgment for that of a medical expert in discounting Dr. Gupta's postural limitations (Doc. 17 at 11-12). The Commissioner counters that substantial evidence supports the ALJ's reasons for discounting Dr. Gupta's opinion and she did not substitute her judgment for that of a medical expert (*id.* at 12-15).

While an ALJ must ordinarily give substantial or considerable weight to a treating physician's opinion, the opinion of a one-time examining doctor does not merit such deference. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). An examining doctor's opinion, however, is usually accorded greater weight than that of a non-examining physician.[12] *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). If an ALJ discounts an examining doctor's opinion, she must provide reasons, supported by substantial evidence, for doing so. *Sharfarz*, 825 F.2d at 280-81 (providing that an ALJ may reject any medical opinion if the evidence supports a contrary finding).

Dr. Gupta examined Plaintiff on request of the SSA on February 6, 2017 (Tr. 2213-19). On physical exam, all findings were normal aside from occasional wheezing on both sides of the lungs, a decrease in oxygen at rest from 97% to 94% when Plaintiff was off oxygen, and reproducible fatigue on repetitive muscle testing, i.e., Plaintiff's heart rate and respiratory rate

---

[12] Besides the nature of a physician's relationship with a claimant, the ALJ must consider other factors in determining the weight given to each medical opinion, including: (1) the medical evidence and explanation supporting the doctor's opinion; (2) how consistent the doctor's opinion is with the record as a whole; and (3) the doctor's area of specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). While the ALJ must consider each factor, it is not mandatory that he explicitly address them in his decision. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).

increased after walking 60 feet around the room at a slow pace (Tr. 2214-16). He assessed lumbar spine pain with no neurological deficit, non-insulin dependent diabetes without complications, asthma and emphysema with complications on oxygen, mental impairments, and a body mass index of 41.3 (Tr. 2217). Dr. Gupta then opined that Plaintiff could sit for three hours in an eight-hour day; stand and walk for one hour each in an eight-hour day; and occasionally reach, handle, finger, feel, and push/pull (Tr. 2221-22). He also stated that Plaintiff could never lift/carry any weight; climb stairs, ramps, ladders, or scaffolds; balance, stoop, kneel, crouch, crawl, or tolerate exposure to certain environmental conditions (Tr. 2220, 2223-24). Dr. Gupta noted Plaintiff's inability to perform postural activities was due to "severe deconditioning" (Tr. 2223).

The ALJ gave "little weight" to Dr. Gupta's opinion, finding that it was inconsistent with the doctor's own evaluation, which noted normal strength, a steady and directed gait, and Plaintiff's ability to sit and stand with ease during the examination (Tr. 18).

The Court is unable to conclude that substantial evidence supports the ALJ's reasons for rejecting Dr. Gupta's opinion. The physical findings noted by the ALJ clearly provide substantial evidence to discount the opinion *assuming* the limitations the doctor assessed resulted from Plaintiff's lumbar spine pain. The decision, however, does not reveal that the ALJ considered whether Dr. Gupta's limitations could have resulted from Plaintiff's asthma and emphysema (COPD) with complications on oxygen and his findings related to the same, namely, reproducible fatigue on repetitive muscle testing and severe deconditioning. Nor did the ALJ address those particular findings in her decision. Without further explanation from the ALJ on this matter, the Court is precluded from determining whether the ALJ's reasons for discounting Dr. Gupta's opinion are supported by substantial evidence. *See Gibson v. Heckler*, 779 F.2d 619, 622 (11th Cir. 1986) (recognizing that the failure to provide the reviewing court

with a sufficient basis on which to determine that the correct legal principles have been followed or that substantial evidence exists mandates a reversal). Given the VE's testimony that no work would be available given Dr. Gupta's RFC assessment (Tr. 58), the ALJ must address and/or clarify this on remand.

### C. The ALJ's Step Two Finding

Plaintiff contends the ALJ erred at step two of the sequential evaluation process by failing to find that her GERD, gastroparesis, fatty liver, IBD, and diverticulitis were severe impairments (Doc. 17 at 15-18). The Commissioner counters that Plaintiff's contention is meritless because she fails to show that any of those impairments result in specific work-related limitations (*id.* at 18).

At step two of the sequential evaluation process, a claimant must show that he or she suffers from an impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). A claimant need show only that his or her impairment is not so slight and its effect is not so minimal that it would clearly not be expected to interfere with his or her ability to work. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter*, 791 F.2d at 1547. In other words, an impairment or combination of impairments is not considered severe where it does not significantly limit the claimant's physical or mental ability to perform basic work activities. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)); *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 948 (11th Cir. 2006).

Notably, however, the finding of *any* severe impairment, whether or not it results from a single severe impairment or a combination or impairments that together qualify as severe, is enough to satisfy step two. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (citations omitted); *see Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013) ("[T]he ALJ determined at step two that at least one severe impairment existed; the threshold inquiry at step two therefore was satisfied); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010) (noting that an ALJ's failure to identify an impairment as severe, where the ALJ found that the plaintiff suffered from at least one severe impairment, constituted harmless error and was, in fact, sufficient to meet the requirements of step two, and additionally noting that nothing requires the ALJ to identify, at step two, all of the impairments that could be considered severe).

Here, the ALJ determined that Plaintiff had the following severe impairments: bipolar disorder, depression, anxiety, degenerative disc disease, emphysema/COPD, asthma, hypertension, Barrett's esophagus, hiatus hernia, obesity, and diabetes mellitus. (Tr. 13). Accordingly, since the ALJ determined that Plaintiff suffered from multiple severe impairments at step two, and thus proceeded beyond step two in the sequential analysis, any error in failing to find that Plaintiff suffered from other severe impairments is rendered harmless. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853-54 (11th Cir. 2013); *Packer*, 542 F. App'x at 892; *Heatly*, 382 F. App'x at 824-25.

This, however, does not end the inquiry. The ALJ then must consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). While an ALJ's statement that she considered all impairments and symptoms in determining the claimant's RFC typically is sufficient to show that the ALJ considered all the

necessary evidence, *see id.* at 952, such a statement in this case is insufficient given the ALJ's review of the medical evidence concerning Plaintiff's abdominal pain and gastroparesis.

On thorough review of the record and the ALJ's decision, the Court is unable to conclude that the ALJ properly considered Plaintiff's gastroparesis at steps four and five because she failed to evaluate the record as a whole when considering Plaintiff's gastroparesis and related complaints and impermissibly disregarded and mischaracterized medical evidence that was contrary to her decision.[13] In addressing select records pertaining to Plaintiff's ER treatment for gastroparesis and abdominal pain, the ALJ stated that the severity of Plaintiff's abdominal pain and nausea was noted to be only mild (Tr. 17). The record, however, reveals ER treatment for vomiting blood with abdominal pain, chronic abdominal pain with worsening symptoms, moderate and sharp onset of abdominal pain with vomiting blood all day, severe abdominal pain, severe vomiting and abdominal cramping, moderate nausea and vomiting blood, and moderate and chronic abdominal pain (*see, e.g.,* Tr. 806, 821, 1353, 1428, 1484, 1693, 1933, 2165). Additionally, these records reflect that Plaintiff's course of symptoms was episodic, with multiple episodes and fluctuating intensity (Tr. 1353, 1428, 1693, 1933, 2165). While the ALJ correctly noted that testing often yielded normal results, there is no indication that doctors doubted the severity of Plaintiff's symptoms or that she suffered from gastroparesis. Notably, Plaintiff's physician at USF Health reported that Plaintiff had a complicated GI history, suffered from persistent nausea and daily vomiting for several years, and had been on multiple medications for gastroparesis and other gastrointestinal problems with little effect (Tr. 805). The ME at the administrative hearing also testified that Plaintiff's gastroparesis was a severe impairment (Tr. 43-44). While the Commissioner contends Plaintiff failed to

---

[13]  Plaintiff essentially raises this exact challenge in her fifth claim because she lists approximately 43 gastrointestinal related records that the ALJ should have considered but did not (Doc. 17 at 24-31).

demonstrate work-related limitations resulting from gastroparesis or other gastrointestinal impairments, Plaintiff's allegations and the records above demonstrate she suffered frequent abdominal pain and episodic vomiting, both of which impact an individual's ability to work.

On remand, the ALJ shall fully and fairly address the medical records documenting this impairment and consider the import of Plaintiff's gastrointestinal symptoms throughout the sequential evaluation.

### D. Plaintiff's Remaining Claims

In light of the findings above, the Court need not address Plaintiff's remaining claims. *See Demench v. Sec'y of Dep't of Health & Human Servs*., 913 F.2d 882, 884 (11th Cir. 1990) (declining to address plaintiff's remaining arguments due to conclusions reached in remanding the case); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised).

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1.  The decision of the Commissioner is reversed, and the matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings to apply the proper legal standards consistent with the above findings.

2.  The Clerk is directed to enter final judgment in favor of the Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 31st day of March 2020.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record